## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                           Crim. No. 21-40 (SRN/BRT)

                Plaintiff,

v.                                                  **REPORT AND**
                                                    **RECOMMENDATION**
Charles William Dexter, III,

                Defendant.

Chelsea A. Walker, Esq., United States Attorney's Office, counsel for Plaintiff.

Deborah K. Ellis, Esq., CJA, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

On February 18, 2021, Defendant Charles William Dexter, III, was indicted on one count of sex trafficking a minor in violation of 18 U.S.C. §§ 1591(a), 1591(b)(2), and 1594(c). (Doc. No. 3, Indictment.) On March 2, 2022, a grand jury returned a Superseding Indictment against Defendant, charging him with two additional counts: (1) sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594(a); and (2) use of an interstate facility to promote unlawful activity, in violation of 18 U.S.C. § 1952(a)(3). (Doc. No. 58, Superseding Indictment.) This case is before the Court on Defendant's motion to suppress evidence obtained as a result of searches and seizure and for a *Franks* hearing (Doc. No. 39) and Defendant's motions to dismiss for selective, discriminatory, and vindictive prosecution. (Doc. Nos. 44, 65.) The matter was referred to the undersigned for a Report and Recommendation pursuant to 28

U.S.C. § 636 and D. Minn. LR 72.1. The Court held a motion hearing on April 13, 2022,

and five exhibits—the five search warrants at issue—were received into evidence. (*See*

Doc. Nos. 82, 83.) For the reasons stated below, this Court recommends that Defendant's

motions be denied.

## BACKGROUND

### A.     August 14 Search Warrant for 2009 Cadillac

On August 14, 2020, Bloomington Police Department Detective Kristin Boomer

obtained a search warrant to search the following described property: "MN registration

724UTG, a 2009 Cadillac CTS 4 door Sedan bearing VIN 1G6DT57V990111962.

Located at the Bloomington Police Department at 1800 W. Old Shakopee Rd,

Bloomington MN 55431." (Doc. No. 83, 4/13/22 Hr'g Ex. List, Hr'g Ex. 2.) The warrant

allowed for a search for the following property and things:

- any and all documents, papers, ledgers, writings, receipts, hotel receipts, or other documents relating to sex trafficking, human trafficking, prostitution, documenting of phone numbers, money exchanged, locations, names or any online advertisements, post or correspondences;

- any and all currency or cash;

- any and all electronic devices including but not limited to cell phones, laptop computers, computers, tablets, or any other device capable of connecting to the internet and the full forensic exam of all seized devices;

- condoms, condom boxes, condom wrappers; and

- any identifications, cards, documents or other property belonging to MMV or TLRB.[1]

---

[1]     MMV and TLRB are two victims in this matter and will be referred to by their initials.

(Hr'g Ex. 2.)

Detective Boomer provided the following facts supporting the issuance of the

August 14 warrant in her affidavit:

> Your affiant, Detective Kristin Boomer is a licensed police officer with the Bloomington Police Department with 22 years of experience in law enforcement, including 8 years of investigative experience. She is currently assigned as a Detective for the Department. In that capacity, she has had the opportunity to investigate numerous crimes committed against the person to include sexual assaults, and assisted in the investigations of sex trafficking and promotion of prostitution. Acting in her capacity, your affiant gives the following information:

> On 08/12/20 Officer Broc Bartylla of the Bloomington Police Department had been informed during rollcall of a tip from the US Marshall Service that an adult male who was a Registered Predatory Offender was possibly staying at a Bloomington hotel with a juvenile female.

> On 08/13/20, using that tip information, Officer Bartylla began searching the internet for potential victims of human trafficking that could be related to this tip. He came across an advertisement on the website Megapersonals.eu that was clearly soliciting/promoting prostitution in the City of Bloomington.

> The advertisement was titled "Come and have fun with us," the ad contained three photos of a female that were sexual in nature that did not appear to be self-captured, and the age listed on the advertisement was 21 years old.

> The phone number listed with the ad was [XXX-XXX-XXXX].

> Officer Bartylla searched police records for that phone number and found that it was associated in a police contact on June 24th 2020 with a 14 year old female and that was her listed phone number. Suspecting that the number belonged to a juvenile female, Officer Bartylla texted the phone number (using his police squad phone) listed on the ad in an effort to recover a potential sex trafficking victim.

> Officer Bartylla made contact with a person at approximately 2315 hours on 08/13/20. He was able to set up a "date" with a female who agreed to a half hour of full service with herself and another female for $250. He asked

her if he needed to bring condoms and the female advised they had condoms available.

After the phone conversation the female texted Officer Bartyllya (sic) the address of her location, [XXXX] 78th Street Circle W #[XXX], which is the Courtyard by Marriott Hotel.

Officers from the Bloomington Police Department went to the hotel and contacted the front desk, informing them that the occupants of room [XXX] had arranged a prostitution date. Hotel staff asked that the Officers assist in evicting the occupants of room [XXX]. The room was registered to [L.G.]. Officer Anderson of the Bloomington Police Department advised of past contacts for [L.G.] relating to prostitution. She was identified through DVS as [L.G.] [XX/XX/XX].

Officers made entry into the room with assistance of hotel staff and the room was unoccupied. Officer observed unused condoms lying in the room in plain view. At the same time, Sgt. Cory Cardenas of the Bloomington Police Department located two females walking the area of the hotel. Officers identified one of these females as a known 14 year old female herein identified as MMV.

Officer Bartylla called the phone number he had used to arrange the "date" and the phone rang to the phone is (sic) the possession of MMV displaying Officer Bartylla's phone number.

MMV then told Officer Bartylla that a male she identified as Charles Dexter drove her to the hotel. She described him as a 40 year old black male with long dreads, cross tattoo on his arm, living somewhere by 38th and 4 St in Minneapolis, and he drove a silver Cadillac passenger car.

MMV further stated that she met Dexter approximately two months ago at a bus shelter. She said Dexter set up the date and she needed to give him half of the prostitution proceeds. She said that Dexter coached her the night before on how to talk [to] prostitution clients and this was going to be her first night attempting prostitution. She decided to work prostitution because Dexter wanted her to.

MMV said the other female she was with was also going to be a part of the prostitution "date." She said that they were both going to have sex in exchange for money with Officer Bartylla. She also said that she believed Dexter's friend "Shonda" was the one who set up the prostitution add (sic).

MMV also stated that she is aware Dexter used to be a promoter of prostitution and he is fully aware he was having MMV engage in prostitution.

MMV said that when Dexter saw police arriving at the hotel, he told her and the other female to leave and meet him nearby. MMV provided a phone number for Dexter, [XXX]-[XXX]-[XXXX]. Online databases showed that number belonging to Dexter as well.

MMV told Officer Bartylla that she had sex with Dexter earlier in the day. He did not ask for any further details.

Officer Bartylla also spoke to the second female, herein identified as a known adult female TLRB. She told Officer Bartylla that she was one of the females in the photos from the online ad. She stated that she was driven to the hotel in a Cadillac by a black male, about 40 years old with dreadlocks, nicknamed RJ. She said there was also a light skinned, long black hair female, about 40 years old, nicknamed "Honey" in the car. That physical description matched that of [L.G.] according to her DVS photo and other booking photos.

TLRB said "RJ" and "Honey" receive a share of the prostitution profit in exchange for providing her and MMV protection during dates. She then admitted to just meeting MMV and advised they were going to have a sex for money exchange with Officer Bartylla.

Officer Smith of the Bloomington Police Department located a Cadillac CTS MN/724UTG registered to Dexter unoccupied in the Courtyard by Marriott parking lot. Officer Smith observed in plain view a box of Trojan condoms on the driver seat, and a box of Durex condoms in between the front passenger seat and door. This vehicle was impounded to the police department.

Dexter was identified as Charles William Dexter DOB [XX/XX/XX]. The physical descriptions given by both MMV and TLRB matched that of Dexter's DVS photos and tattoos listed in booking reports.

MMV was eventually transported to the hospital to complete a sexual assault exam. At the time of the report, Dexter had not been located. Officers put a probable cause pick up alert for Dexter for 1st Degree Criminal Sexual Conduct and 1st Degree Promotion of Prostitution.

I was assigned this case on the morning of 08/14/20 and reviewed the

reports. I was able to review the online ad that Officer Bartylla had used to contact MMV. The ad had photos of females' buttocks in underwear. The ad said, "hi guys looking for fun we are hot young wet and ready very open and non-rushed sessions." It also had the phone number of [XXX]-[XXX]-[XXXX] and the location was Bloomington.

There was also a second add (sic) posted with one of the same photos as the first. This add (sic) was titled "come play with us daddy." It stated, "hi guy looking for fun so are we ... young hot tight very open minded looking forward to meeting and greeting with you.["] The phone number listed was [XXX]-[XXX]-[XXXX] (Dexter's phone number) and the location was Bloomington.

Det. Lucas assisted me by establishing a ping on Dexter's phone through T-Mobile. Ping locations showed Dexter in the area of his listed driver's license address of [XXXX] 6th St. in Minneapolis.

Officers conducting surveillance of that residence observed a vehicle bearing MN registration WY6954, a Hyundai (sic) Elantra pull up near that address, saw a female matching the description of [L.G.] get out as well as a male matching the description of Dexter get out and both enter [XXXX] N. 6th St. (Dexter's listed address). Records showed that Hyundai registered to [L.G.].

Dexter called the police department looking for his vehicle. Sgt. Ousley with the Bloomington Police Department called him back and told him his vehicle was in impound at the police department and he would have to come there to retrieve the vehicle.

Officers on surveillance then observed [L.G.] and Dexter get back into [L.G.'s] vehicle and they drove to the Bloomington Police Department. Both were subsequently arrested and booked into the Bloomington jail. [L.G.]'s vehicle was impounded.

Based on this information, your affiant believes that Dexter and [L.G.] are both involved in the promotion of prostitution of a minor, MMV, based on statements made by both MMV and TLRB. Your affiant also believes that Dexter committed Criminal Sexual Conduct in the 3rd Degree based on statements by MMV. Your affiant knows that MMV was transported to the hotel by Dexter in a silver Cadillac and Officers located a silver Cadillac sedan registering to Dexter in the lot of the hotel. Your affiant is requesting that a search warrant be granted to search:

MN registration 724UTG, a 2009 Cadillac CTS 4 door Sedan bearing VIN
1G6DT57V990111962.

Located at the Bloomington Police Department at 1800 W. Old Shakopee
Rd, Bloomington MN 55431.

(Hr'g Ex. 2.) The search warrant issued on August 14, 2020. (*Id.*)

## B.    August 14 Search Warrant for Defendant's DNA

The same day, August 14, 2020, Detective Kristin Boomer obtained a second

search warrant to obtain a "[s]ample of deoxyribonucleic acid (DNA) from the person

Charles William Dexter DOB [XX/XX/XX]." (Hr'g. Ex. 1.) To support probable cause

for the issuance of this warrant, Detective Boomer restated substantially all of the content

from the preceding August 14, 2020 warrant for the 2009 Cadillac. This included the fact

that on August 12, 2021, Officer Bartylla "had been informed during rollcall of a tip from

the US Marshall Service that an adult male who was a Registered Predatory Offender was

possibly staying at a Bloomington hotel with a juvenile female." (*Id.*) Detective Boomer

also added the following:

> I was assigned this case on the morning of 08/14/20 and reviewed the
> reports.
>
> I went to HCMC to locate MMV and attempt to speak to her. I was
> informed that she was sedated and had a very rough night, having to be
> restrained. I confirmed though (sic) a hospital social worker that she did
> have a Sexual Assault Evidence (SAE) Kit completed during a SAE exam.
> I was told that the evidence was not ready to be picked up at that time
> though.
>
> I learned that Officer Sager of the Bloomington Police Department picked
> up the SAE kit and other evidence from HCMC for this case.
>
> I reviewed the hospital paperwork and in that, MMV admits to having
> sexual relations with Dexter multiple times and that he takes care of her.

She also admitted to having been pregnant with Dexter's child but she miscarried.

Based on the aforementioned information, Your Affiant respectfully requests that a warrant be issued to obtain a sample of deoxyribonucleic acid (DNA) from the person Charles William Dexter [XX/XX/XX]. This sample will be collected using a Buccal swab, in order to compare it with deoxyribonucleic acid (DNA) evidence and other evidence from the Sexual Assault Examination Kit that was collected from the victim MMV.

(*Id.*) The search warrant issued on August 14, 2020. (*Id.*)

### C.    **August 15 Search Warrant for Defendant's Cellphone**

On August 15, 2020, Officer Jacob Lucas of the Bloomington Police Department obtained a third warrant to search the following property: "Black LG smartphone in the possession of Charles Dexter at the time of his arrest. (Unknown model or serial). Black Samsung Galaxy in the possession of [L.G.] at the time of her arrest. (Unknown model or serial)." (Hr'g Ex. 3.) The warrant allowed for a search of the following property and things: "Full forensic exam of the electronic devices and any connected cloud accounts." (*Id.*) In his affidavit in support of the third warrant, Officer Lucas included nearly all the facts from the first warrant for the 2009 Cadillac. (*Id.*) He also included the fact that on August 12, 2021, Officer Bartylla "had been informed during rollcall of a tip from the US Marshal Service that an adult male who was a Registered Predatory Offender was possibly staying at a Bloomington hotel with a juvenile female." (*Id.*) In addition, Officer Lucas stated:

Your affiant has reason to believe based on statements made by MMV and TLRB and based on the hotel registration card that MMV and TLRB occupied or were inside room [XXX] of the Courtyard by Marriott Hotel located at [XXXX] 78th Street Circle W, Bloomington, Minnesota 55435 for the purpose of prostitution. I know from my training and experience,

electronic devices such as smart phones are often used by sex traffickers and those involved in prostitution to set up "dates" and discuss other illegal matters. Your Affiant believes that information about the sex trafficking and prostitution along with information about Dexter's relationship with minor victim MMV may be on these smart phones. Your affiant requests a warrant be granted for the Black Samsung Galaxy found in [L.G.]'s possession at the time of her arrest as well as the Black LG smart phone found in Dexter's possession at the time of his arrest. Your affiant requests the warrant to include a full forensic exam of the devices and any connected cloud accounts.

Both phones were seized for evidence at the time of their arrests and are currently in evidence at the Bloomington Police Department.

(*Id.*) The search warrant issued on August 15, 2020. (*Id.*)

### D.    August 19 Search Warrant for Defendant's Residence and 2007 Cadillac and 2007 Dodge

On August 19, 2020, Detective Kristin Boomer obtained a fourth search warrant to

search the following property:

- [XXXX] 6th St. N, Minneapolis Minnesota 55412- a single family residence, including any outbuildings, storage sheds, or garages attached or detached located on the property; and

- Any and all vehicles located on the above property and any of the following vehicles located: a 2007 Cadillac Escalade bearing MN plate 113UZL; a 2007 Dodge Charger bearing MN plate 431UZB.

(Hr'g Ex. 4.) The warrant allowed for a search for the following property and things:

- Any and all documents, papers, ledgers, writings, receipts, hotel receipts, or other documents relating to sex trafficking, human trafficking, prostitution, documenting of phone numbers, money exchanged, locations, names or any online advertisements, post or correspondences;

- And (sic) identifications, cards, and documents belonging to any party that had occupied or had been inside the residence and documents to show residency;

- Any and all currency or cash, bank statements, bank records or other

banking documents or documents related to the sending, saving or exchanging of money;

- Any and all electronic devices including but not limited to cell phones, laptop computers, computers, tablets, or any other device capable of connecting to the internet and the full forensic exam of all seized devices;

- Any identifications, cards, documents, clothing or other property that appears to belong to females or that belongs to MMV;

- Any and all weapons commonly known as guns, rifles, shot guns, or other items that could be considered or resemble a gun;

- Full photographs of the residence, property, vehicles and outbuildings on the property;

- The collection of bedding, sheets, blankets, pillows, and any other linens or materials that may contain the evidence from biological fluids; and

- Any and all items related to the promotion or involvement in prostitution including but not limited to condoms- used or unused, condom boxes, self-lubricating liquids, body lotions, and women's lingerie or under garments.

(*Id.*) The facts that Detective Boomer stated in her affidavit in support of the issuance of the fourth warrant included the facts from the preceding August 15, 2020 warrant of [L.G.]'s and Defendant's phone. Again, this warrant included the fact that on August 12, 2021, Officer Bartylla "had been informed during rollcall of a tip from the US Marshall Service that an adult male who was a Registered Predatory Offender was possibly staying at a Bloomington hotel with a juvenile female." (*Id.*) Detective Boomer also added the following additional facts within the restated facts:

> Interviews were conducted with Dexter and [L.G.] and both were charged in custody by the Hennepin County Attorney's Office with Promoting of Prostitution Victim Under 18 Years Old.
>
> . . . .

Dexter was not initially charged with the sexual assault offense of MMV as the attorney wanted to wait for the full forensic interview of MMV. On 08/18/20 I was able to observe that interview which was held at Cornerhouse.

MMV disclosed multiple incidents of sexual assault committed against her by Dexter. She said they occurred at his home on 6th Avenue North and it was a brown house. Det. Lucas was also with me during this interview and confirmed this was in fact Dexter's home based on his surveillance of Dexter.

MMV described the areas in the home where Dexter assaulted her including the living room on a brown couch, his bedroom which had a large black bed, the bathroom, the workout room and the stairs. She said that she would also stay the night at Dexter's house occasionally.

During these sexual assaults, which she described as Dexter putting his private area inside her private area, she said Dexter often choked her, and one time she went unconscious. She stated she thought she was going to die.

MMV also disclosed her first meeting Dexter and she said he approached her at a bus stop and asked her, "Do you wanna make money?" "I can get you off your feet." MMV said he was referring to prostitution. She said that Dexter was driving a silver Cadillac car at that time and that he would always pick her up. She said sometimes he drove a Cadillac SUV as well.

She said that Dexter did coach her on how to talk to the patrons that engaged in the prostitution with her. She stated that Dexter brought her to an out call which she engaged in sexual intercourse for the exchange of money and that she participated in two other interactions of exchanging sexual intercourse for money at the Marriott Hotel in Bloomington on the date in question (08/13/20).

      . . . .

I spoke to Hennepin County Child Protection Investigator Jodie Glaspie, who has been working with me on this case, regarding her interview with Dexter's minor child, a known 9 year old female, and her mother. Glaspie said that while interviewing the child, she disclosed the following, "She reports that she feels safe sometimes at her dad's but one time she was laying on his bed and she tried to move his pillow and it was heavy and it

was a gun in the pillow case. She reports that she did not see the gun but she could feel that it was a gun. She reports that she did not tell her dad about the gun because she was scared he would get mad." There was no time context given as to when she found this.

Det. Barland, who completed the forensic examination of a cell phone that had been in Dexter's possession at the time of his warrant, stated to me that he saw photos of assault rifles and guns on his phone. I reviewed the photos that Det. Barland provided to us with the image detail information and found that on 06/26/20 at 1044 hours Dexter took a photo with his cell phone of 3 guns lying on what looks like a bed with maroon sheets. One gun is a Glock hand gun, one is another hand gun (unknown make and model) and the third is an assault rifle similar to an AR-15 police rifle.

Det. Lucas also requested jail calls from Dexter for his time in Hennepin County Jail. During one of those calls, Dexter tells the other person on the phone to go to his "crib" and get money, which he referred to as "bread." He told this person that he has a lot of money to cover his bail. He also stated that he owns his home.

Current Hennepin County tax records show that Charles Dexter owns the home at [XXXX] 6th St. N, Minneapolis Minnesota 55412.

Officers also learned that [L.G.] was released from jail on 08/17/20.

Motor vehicle records show that Dexter has 3 vehicles currently or recently registered to him in 2020. One of those is in police custody. The other two are as follows:

A 2007 Cadillac Escalade bearing MN plate 113UZL

A 2007 Dodge Charger bearing MN plate 431UZB

Det. Lucas saw both of these vehicles on the property of or parked out front of Dexter's residence on 08/14/20 during his surveillance of that residence.

Based on this information, your affiant believes that Dexter is involved in the promotion of prostitution of a minor, MMV, and that he committed Criminal Sexual Conduct in the 1st Degree against the minor victim MMV.

An unannounced entry is necessary (to prevent the loss, destruction or removal of the objects of the search and to protect the safety of the peace officers) because:

Your affiant knows from previous investigations that individuals who are engaged in the promotion of prostitution and sexual assault crimes maintain methods to destroy evidence in a rapid and expedient manner and they will sometimes maintain weapons for their protection and the protection of the women engaged in the prostitution. An unannounced entry presents a higher likelihood to allow police to gain entry and control any suspects prior to them having the opportunity to arm themselves or destroy evidence.

Your affiant requests an unannounced entry to eliminate the possibility of any evidence being destroyed and to maintain an element of surprise. Maintaining this element of surprise will not only preserve officer safety but also the safety of other citizens in the neighborhood and any suspects in the residence.

Your affiant has reason to believe that Dexter has weapons in his home, including but not limited to guns. Your affiant also does not know who, if any other residents reside in the home or are staying in the home.

Your affiant requests that a search warrant be granted for this location, including any outbuildings and vehicles on the property to obtain any and all evidence of these crimes . . . .

(*Id.*) The search warrant issued on August 19, 2020. (*Id.*)

### E.    August 24 Search Warrant for Defendant's Cellphone Data

On August 24, 2020, Detective Boomer obtained a fifth search warrant for records

and data connected to two T-Mobile phone numbers associated with [L.G.] and

Defendant, which requested the following:

- disclosure of Subscriber and Billing Records to include: ESN, IMEI, IMSI, MSID, MEID, Android ID, Apple ID and associated addresses (MAC addresses);

- disclosure of historical Call Detail Records with Cell Site and sector information from 08/13/20 through 08/14/20;

- all related customer service notes and relative documentation of changes and adjustments made to the accounts; and

- disclosure of Per Call Measurement Data (PCMD), Range to Tower/ Real-Time

Tool (RTT) records, NELOS records, Timing Advance (TrueCall Data) records, and other historical GPS precision location information associated with these transactions from 08/13/20 through 08/14/20.

(Hr'g. Ex. 5.) To support probable cause for the issuance of this warrant, Detective

Boomer restated substantially all of the facts from the preceding August 14, 2020 warrant

for the 2009 Cadillac. This included the fact that on August 12, 2021, Officer Bartylla

"had been informed during rollcall of a tip from the US Marshall Service that an adult

male who was a Registered Predatory Offender was possibly staying at a Bloomington

hotel with a juvenile female." (*Id.*) Detective Boomer also added the following:

> Through further investigation, Detectives were able to locate Dexter and [L.G.] on 08/14/20 and they were subsequently arrested. Both of the cell phones they had in their possession at the time of their arrests were inventoried as possible evidence.
>
> In post Miranda interviews, Dexter stated that he was never at the Courtyard by Mariott hotel in Bloomington. [L.G.] stated that she had a room at that hotel and had been staying there for about 2 weeks. She stated that she may have been at the Courtyard on the night of the incident.
>
> Documents collected from [L.G.]'s vehicle during her arrest showed a receipt from the Courtyard by Marriott for a stay with a beginning date of 07/29/20.
>
> A search warrant was issued on 08/15/20 by the Honorable Judge Luis Bartolomei and was served. Det. Barland of the Bloomington Police Department completed the phone data extraction using Cellebrite and through examination of the date of [L.G.]'s phone, I found that her phone number was [XXX]-[XXX]-[XXXX]. Dexter's phone number was also confirmed as [XXX]-[XXX]-[XXXX].
>
> Through and online data base known to me, I found that carrier and service provider for both of these numbers is T-Mobile. Preservation requests were sent to both providers.
>
> Both Dexter and [L.G.] were charged with the Promotion of Prostitution of a minor victim by the Hennepin County Attorney's Office based on this

investigation and evidence collected.

Based on this information, your affiant believes that Dexter and [L.G.] are both involved in the promotion of prostitution of a minor, MMV, based on statements made by both MMV and TLRB. Your affiant also believes that Dexter committed Criminal Sexual Conduct in the 3rd Degree based on statements by MMV.

Based on this information, your affiant believes that both Dexter and [L.G.] were at the Courtyard by Marriott the night of the incident. Your affiant knows through training and experience that cell phone carriers and service providers maintain a variety of data that will assist in determining the location and activities of people using or in possession of those phones.

(*Id.*) The search warrant issued on August 24, 2020. (*Id.*)

On February 18, 2021, Defendant Charles William Dexter, III, was indicted on one count of sex trafficking a minor, which was followed by a Superseding Indictment on March 20, 2022, charging two additional counts: (1) sex trafficking by force, fraud, and coercion and (2) use of an interstate facility to promote unlawful activity. (Indictment; Superseding Indictment.)

## DISCUSSION

The issues before the Court are whether Defendant has met his showing for a *Franks* hearing and, if no *Franks* hearing will be had, whether the search warrant affidavits at issue provided sufficient probable cause.[2] Additionally, Defendant raises a

---

[2]    Defendant's motion to suppress also includes a request to suppress "fruits from his arrest" as well as evidence obtained from the search warrants. (Doc. No. 39 at 1.) The Government, in their response to Defendant's supplementary briefing, asserts that Defendant failed to specify the basis for his suppression challenge regarding his arrest. (Doc. No. 93 at n.1.) Consequently, the Government asks that the Court "summarily deny that aspect of Defendant's motion." (*Id.*) Because Defendant has not specified the basis for this challenge at either the April 13, 2022, motions hearing or in his post-hearing

challenge to the no-knock warrant issued for his residence. Finally, Defendant moves the court to dismiss based on claims of selective and vindictive prosecution.

## I.    *Franks* hearing

Defendant seeks a *Franks* hearing with regard to all five warrants. Specifically, Defendant states that Bloomington police officers repeated that he was a "Registered Predatory Offender"—which he argues is false—in the opening facts of the five search warrant applications:

> On 08/12/20 Officer Broc Bartylla of the Bloomington Police Department had been informed during rollcall of a tip from the US Marshall Service that an adult male who was a Registered Predatory Offender was possibly staying at the Bloomington hotel with a juvenile female.

(*See* Gov't Exs. 1–5.) Defendant argues that the assertion that he was a "Registered Predatory Offender" was not only false, but that the affiant officers either knew it was a false or recklessly disregarded its veracity. In response, the Government argues that Defendant has not met his burden to make a substantial showing of either an intentional or reckless material falsehood or omission to warrant a *Franks* hearing. (Doc. No. 72 at 16–20.)

The legality of a search may be subject to challenge even if conducted pursuant to a warrant. A defendant may challenge the veracity of the affidavit offered in support of probable cause. *See United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999). "To warrant a hearing on the affidavit's veracity, the defendant must make 'a substantial

_____

supplemental memorandum, this Court recommends that this portion of Defendant's motion be denied.

16

showing that the affidavit contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause.'" *Id.* (alterations in original) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997); citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). The Eighth Circuit has also "applied [the] rationale [of *Franks*] to cover material that has been deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993); *see also United States v. Wilson*, 324 F. App'x 546, 547 (8th Cir. 2009) (applying the two-part test for omissions).

The substantial showing required for a *Franks* hearing "is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008); *see also United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) ("The requirement of a substantial preliminary showing is not lightly met . . . ." (quotations omitted). A defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quotations omitted). If a defendant makes the substantial showing necessary to entitle him to a *Franks* hearing, he must then prove his allegations before the Court will suppress evidence. *Jacobs*, 986 F.2d at 1234. If the defendant establishes "the allegation of perjury or reckless disregard" by a preponderance of the evidence, and, "with the affidavit's false

17

materials set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* (quoting *Franks*, 438 U.S. at 155–56).

Defendant argues that the reference to his status as a "Registered Predatory Offender" was not only false, but that the affiant officers either knew it was false or recklessly disregarded its veracity. In support of his *Frank*'s hearing, Defendant provides an affidavit from private investigator Susan L. Johnson averring that Defendant has never been a registered predatory offender. (*See* Doc. No. 39-1.) Ms. Johnson states that she has examined court and criminal databases, as well as Defendant's criminal history data, that show no record of Defendant ever being convicted of any crime that would require him to register as a predatory offender. She also avers that the Bloomington Police Department on August 14, 2020, prior to requesting the five warrants, had in its possession a fifteen-page document showing Defendant's criminal data, which, according to Ms. Johnson, did not contain a conviction that would require predatory offender registration. (*Id.*)

The statement in each of the search warrants at issue, however, simply reports the content and nature of a tip that Officer Bartylla received from the U.S. Marshals. That tip was "that an adult male who was a Registered Predatory Offender was possibly staying at the Bloomington hotel with a juvenile female." (Hr'g. Exs. 1–5.) Defendant does not suggest that the *receipt of this tip* itself was false. Further, even if the underlying "tip" information was inaccurate, this does not establish a violation under *Franks*. As the Supreme Court stated in *Franks*, the Fourth Amendment does not demand that "every

18

fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants." *Franks*, 438 U.S. at 165; *see also United States v. Clapp*, 46 F.3d 795, 800 (8th Cir. 1995) ("[S]earch warrants need not always be literally true in order to be valid given investigative time constraints and officers' reliance on hearsay information."). Instead, the Fourth Amendment demands that an affiant makes a truthful showing "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

Moreover, Defendant has not shown that any of the affiants made a deliberate falsehood or made averments in reckless disregard for the truth. "An affiant knowingly and intentionally or recklessly includes a false statement if he 'in fact entertain[s] serious doubts as to the truth of the affidavit or ha[s] obvious reasons to doubt the accuracy of the information contained therein.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Clapp*, 46 F.3d at 801). Defendant argues that Bloomington Police Department had in its possession Defendant's criminal data, which, according to Defendant, would have alerted the affiant officers that Defendant would not require predatory offender registration. But this argument is insufficient. The Eighth Circuit has held that inaccuracies in an affidavit related to criminal history amounts to at most negligence, which does not trigger a *Franks* hearing. *See Stevens*, 530 F.3d at 717, 719 (holding that an affiant officer was at most negligent in including inaccurate information regarding the defendant's criminal history where the officer overstated the number of the defendant's narcotic-related arrests and other information in obtaining a warrant to search

the defendant's residence for drugs). Thus, under the first prong of *Franks*, Defendant has not made a substantial showing that the affiants deliberately or recklessly disregarded the truth through a false statement or omission.

But even assuming that Defendant had made a substantial showing that the inclusion of such a statement was either a deliberate falsehood or reckless disregard for the truth, Defendant has also not shown, under the second prong of *Franks*, that the challenged statement was necessary for the signing judge's finding of probable cause. Again, as part of his burden to request a *Franks* hearing, Defendant must show that the remaining facts in the five warrant applications would not "support the reasonable probability that evidence of criminal activity would be found in the areas that were searched." *Clapp*, 46 F.3d at 801. Here, the reference to a "Registered Predatory Offender" was neither critical to the finding of probable cause nor would have changed that finding when the remaining content about an "adult male" who was "staying with a juvenile female" combined with the other information that minor victim MMV told officers that a 40-year-old male she identified as Defendant had sex with her earlier that day; that Defendant set up the "dates" with sex buyers; that Defendant "coached" her on how to talk to "clients"; that Defendant drove her to the hotel for the commercial sex acts; that she needed to give Defendant half of the proceeds; and that Defendant called her when he saw police arrive at the hotel and told her to leave. (Hr'g. Exs. 1–5.) This, and other information in the applications, supported a finding of probable cause without the inclusion of the reference to a registered sex offender status. Thus, Defendant has not established that a "corrected" or "supplemented warrant," (i.e., the affidavit with the

20

purported falsehoods removed), would not have supported the existence of probable cause. *Reivich*, 793 F.2d at 962.

In sum, this Court concludes that Defendant has failed to make a substantial preliminary showing that the affiants made intentional or reckless false statements or that the warrant application, with the at-issue statement omitted, would be insufficient to support a finding of probable cause. Therefore, this Court recommends that Defendant's motion for a *Franks* hearing be denied.

## II.    Probable Cause

In addition to requesting a *Franks* hearing, Defendant also challenges the probable cause underlying the affidavits for the five warrants and requests a four-corners review. The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (quotations omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should not review

search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exist[s].'" *United States v. Oropesa*, 316 F.3d 762, 767 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

### A.    August 14 Search Warrant for the 2009 Cadillac

Defendant argues there was no nexus connecting the allegations regarding Defendant's sex trafficking with the 2009 Cadillac. (Doc. No. 88, Suppl. Mem. in Supp. of Mot. to Suppress Evid. Obtained Pursuant to Search Warrants ("Def.'s Mem.") 3.) The August 14 search warrant application for the 2009 Cadillac, however, included information linking Defendant to the criminal activity and linking both Defendant and his criminal activity to the 2009 Cadillac. This information included information regarding Defendant's sex trafficking activity, namely statements by underage victim MMV (that Defendant had "coached" her how to talk to prostitution clients, set up "dates" for her wherein she was instructed by Defendant to pay him half of the prostitution proceeds,

directed her and TLRB to leave the hotel room when police arrived and meet him nearby, and had sex with MMV), statements by victim TLRB (that she was driven to the hotel by a man fitting Defendant's description and that the man fitting Defendant's description receive a share of the prostitution profit in exchange for her and MMV's protection during dates), a tip from the US Marshal Service that an adult male was staying at a Bloomington hotel with a juvenile female, and sexually explicit online advertisements of underage females that led officers to a hotel in Bloomington.

The August 14 search warrant also included information linking Defendant and his criminal activity to the 2009 Cadillac. This included statements from both MMV and TLRB that Defendant drove them to the hotel in a Cadillac passenger car as well as observations from officers of unused condoms found in the hotel room and boxes of condoms in a Cadillac registered to Defendant parked in the hotel's parking lot.

Contrary to Defendant's argument, these facts taken together indicate a fair probability that evidence of Defendant's criminal activity would be found in the 2009 Cadillac. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Because probable cause deals with probabilities and depends on the totality of the circumstances, . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (quotations and citation omitted).

For these reasons, this Court concludes that the information presented in the affidavit about the 2009 Cadillac indicated a fair probability that evidence of Defendant's criminal activity would be found in the 2009 Cadillac. Therefore, this Court concludes

that the August 14 supporting affidavit for the search of the 2009 Cadillac provided a proper nexus and sufficient probable cause for the search.

### B.    August 14 Search Warrant for Defendant's DNA

Defendant also argues there was no nexus connecting the allegations regarding Defendant's sex trafficking with the DNA search. Specifically, Defendant argues that the "mere fact that a sexual assault examination kit existed does not provide a basis to conclude that DNA testing was done." (Def.'s Mem. 2.) In other words, Defendant argues that the supporting affidavit for the buccal swab did not indicate whether the Sexual Assault Evidence Kit taken of MMV included a DNA sample that could be used for comparison. However, the affidavit states that "deoxyribonucleic acid (DNA) evidence and other evidence from the Sexual Assault Examination Kit . . . was collected from the victim MMV." (Hr'g. Ex. 1.) Thus, contrary to Defendant's assertion, DNA evidence had been obtained from MMV by which a comparison could be made. In addition to stating a comparable sample was available, the August 14 search warrant application for Defendant's DNA also included information linking both Defendant and his criminal activity to his DNA. That information included statements from MMV that Defendant had sex with her multiple times (including earlier that day) and that she had once been pregnant with Defendant's child before miscarrying. These facts taken together indicate a fair probability that evidence of Defendant's criminal activity, including sexual assault, would be found in a DNA comparison with the DNA evidence obtained from MMV.

For these reasons, this Court concludes that the information presented in the affidavit supporting the buccal swab warrant indicated a fair probability that evidence of

Defendant's sex trafficking would be found via a DNA sample. Therefore, this Court concludes that the August 14 supporting affidavit for the buccal swab of Defendant provided a proper nexus and sufficient probable cause for the search.

### C.    August 15 Search Warrant for Defendant's Cellphone

Defendant argues that no fair probability existed that evidence of criminal activity would be found on his cellphone. To the contrary, the August 15 application for Defendant's cellphone included information linking both Defendant and his sex trafficking activity to the phone. That information included statements from MMV that Defendant used his phone to contact her and that Defendant set up her prostitution dates, and that one of the prostitution advertisements included Defendant's phone number as a contact. In addition, Officer Lucas also added that, in his training and experience, "electronic devices such as smart phones are often used by sex traffickers and those involved in prostitution to set up 'dates' and discuss other illegal matters." (Hr'g. Ex. 3.)

In his supporting brief, Defendant argues certain facts "negated any suspicion" because the phone number on one of the advertisements was not Defendant's and MMV told police that another person named "Shonda" had been responsible for setting up the advertisement. (Def.'s Mem. 4.) However, these facts only show that another person may have also been involved in the sex trafficking. They do not subtract from the facts stated above that provide a fair probability that evidence of Defendant's sex trafficking activity would be found on his phone.

For these reasons, this Court concludes that the information presented in the August 15 affidavit supporting the warrant to search and seize Defendant's cellphone

indicated a fair probability that evidence of Defendant's criminal activity would be found

on his phone. Therefore, this Court concludes that the August 15 supporting affidavit for

Defendant's phone provided a proper nexus and sufficient probable cause for the search.[3]

### D.    August 19 Search Warrant for Defendant's Residence and 2007 Cadillac and 2007 Dodge

Defendant argues that no fair probability existed that evidence of criminal activity

would be found at his residence or in the 2007 Cadillac and 2007 Dodge. The August 19

search warrant application, however, included information linking Defendant and his sex

trafficking and sexual assault activity to the residence and the two vehicles. This

information included statements from MMV that Defendant committed multiple incidents

of sexual assault against her at his home, that she would stay overnight at Defendant's

house, that Defendant had driven MMV to the hotel in a Cadillac, that Defendant would

always pick her up in a car and bring her to prostitution dates, and that Defendant drove

different vehicles. It also included observations by police showing people fitting

descriptions of Defendant and his suspected accomplice [L.G.] pull up in a vehicle near

his residence's address as well as observations showing the 2007 Cadillac and 2007

Dodge parked in front of Defendant's house. Moreover, motor vehicle records showed

three cars registered to Defendant, including the 2007 Cadillac and 2007 Dodge.

---

[3]     At the April 13, 2022 hearing, this Court permitted supplementary briefing to address Defendant's argument that the warrants lacked probable cause. As part of his supplementary briefing, Defendant makes passing references to a lack of particularity as to the August 15 warrant for his cellphone: "The affiant's assertions fail the particularity requirement." (Def.'s Mem. 4.) This argument is untimely; however, even if considered, this Court finds Defendant has not shown a lack of particularity as to the August 15, 2022 warrant.

Additionally, the affiant included information that police had established a ping on Defendant's phone which located Defendant in the area of his residence. These facts taken together indicate a fair probability that evidence of Defendant's criminal activity would be found in both the residence and the two vehicles.

For these reasons, this Court concludes that the information presented in the August 19 affidavit supporting the warrant to search Defendant's residence and vehicles indicated a fair probability that evidence of Defendant's sex trafficking would be found at his residence and in the 2007 Cadillac and 2007 Dodge. Therefore, this Court concludes that the August 19 supporting affidavit for Defendant's residence and vehicles provided a proper nexus and sufficient probable cause for the search.

### E.    August 24 Search Warrant for Defendant's Cellphone Data

Finally, Defendant argues that no fair probability existed that evidence of criminal activity would be found in the cellphone data for the number [XXX]-[XXX]-[XXXX]. However, this Court finds that the August 24 application for the cellphone data included information linking both Defendant and his sex trafficking activity to the phone. That information included statements from MMV that Defendant used his phone to contact her and that Defendant set up her prostitution dates, and that, at the time of his arrest, Defendant had in his position a cellphone with the [XXX]-[XXX]-[XXXX] number. For these reasons, this Court concludes that the information presented in the August 24 cellphone data warrant affidavit indicated a fair probability that evidence of Defendant's sex trafficking would be found on his phone. Therefore, this Court concludes that the August 24 supporting affidavit for Defendant's phone data provided a proper nexus and

sufficient probable cause for the search.[4]

### F.    *Leon* exception

Even if probable cause did not exist for these five warrants, the good-faith

exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897

(1984), would have to be considered. "Under the good-faith exception, evidence seized

pursuant to a search warrant that lacked probable cause is admissible if the executing

officer's good-faith reliance on the warrant is objectively reasonable." *United States v.

Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the

objectively ascertainable question whether a reasonably well trained officer would have

known that the search was illegal despite the [issuing judge's] authorization." *United

States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations

omitted). "When assessing the objective [reasonableness] of police officers executing a

warrant, [the Court] must look to the totality of the circumstances, including any

information known to the officers but not presented to the issuing judge." *Id.* at 431

(alteration in original) (quotations omitted). The Court in *Leon* cited four circumstances

in which the good-faith exception does not apply:

> (1) when there is a *Franks* violation; (2) when an issuing judge has "wholly
> abandoned his judicial role"; (3) when it is entirely unreasonable to believe
> that an affidavit provides probable cause to issue a warrant; and (4) when
> the warrant is "so facially deficient" that no police officer could reasonably
> presume the warrant to be valid.

---

[4]    Defendant argues the August 24 warrant for cellphone data lacks "specificity."
(Def.'s Mem. 9.) Defendant's argument, however, is untimely. Even if it was not, this
Court finds that the August 24 warrant, which was largely limited to certain data from
August 13, 2020 to August 14, 2020, was sufficiently particular.

*United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quoting *Leon* 468 U.S. at

923).

Here, as already determined by this Court, Defendant is not entitled to a *Franks*

hearing, and the other three circumstances highlighted by *Puckett* do not apply. *See id.*

Based on this Court's review, there is no evidence to suggest that the officers' reliance on

the warrants were not in good faith, nor is there evidence that the officers' reliance was

not objectively reasonable. Thus, this Court concludes that the good-faith exception

would apply to the five search warrants.

### III.    No-knock warrant

Defendant also argues that, under *Hudson v. Michigan*, the search of Defendant's

residence violated the Fourth Amendment requirement that police knock and announce

their presence prior to entering the premises. 547 U.S. 586 (2006). Defendant argues that

the warrant did not recite the requisite reasonable suspicion required to support an

authorization to forego the knock and announce requirement when they omitted

information on whether any individual was possibly in Defendant's residence.

Under the Supreme Court's decision in *Hudson*, police must knock and announce

their presence to provide residents an opportunity to open the door. *Id.* at 589–90.

However, if police have "reasonable suspicion" to believe that either (1) the

circumstances present a threat of physical violence, (2) evidence would likely be

destroyed if advance notice were given, or (3) knocking and announcing would be futile,

the police need not knock and announce their presence. *Id.* The Supreme Court has

emphasized that the showing of any of these grounds "is not high." (*Id.*) (quotations omitted).

Here, Defendant argues that Detective Boomer "failed to provide any factual basis to believe that anyone would possibly be at the residence" and thus that there was "a need for an unannounced entry." (Def.'s Mem. 6.) Defendant notes that he was in custody at the time the application to search his residence was signed. (*Id.*) This fact, however, does not diminish the uncertainty that others could be inside the residence. In addition, the search warrant for Defendant's residence included information that Defendant's daughter had found a gun inside a pillowcase inside the home, that Defendant had taken a photo of three guns lying on a bed (including an assault rifle), and that Defendant (while in custody) had contacted an unidentified individual to go to his house and retrieve money. (Hr'g. Ex. 4.) Along with these observations that Defendant possibly had multiple weapons inside his home and that unidentified individuals had access to his home, when viewed together with the seriousness of the sex trafficking and child sex assault offenses, there was reasonable suspicion to believe that the circumstances presented a threat of physical violence and that evidence would likely be destroyed if advance notice were given. Thus, this Court does not find that the search of Defendant's residence violated the Fourth Amendment requirement that police knock and announce their presence prior to entering the premises.

Still, even assuming there was no reasonable suspicion, the remedy for such a violation is not the suppression of the evidence seized pursuant to the search warrant. In *Hudson* the Supreme Court considered the appropriate remedy for a knock and announce

violation, and concluded that the exclusionary rule is inapplicable in a situation where officers violate the knock and announce rule. *Id.* at 594. The Supreme Court concluded that the seizure of the evidence in *Hudson* was the product of a search conducted pursuant to a valid warrant, "not the fruit of the fact that the entry was not preceded by knock and announce." *Id.* at 601. Therefore, the Supreme Court concluded that the exclusionary rule does not apply to situations where the police fail to knock and announce their presence prior to conducting a search pursuant to a valid search warrant. Defendant admits that under *Hudson* a violation of the unannounced or no-knock rule, although a violation of the Fourth Amendment, does not require suppression of evidence seized. (Def.'s Mem. 7.) Thus, even if the search warrant of Defendant's residence did not sufficiently state reasonable suspicion to support the authorization of a no-knock warrant, the remedy for such a violation is not suppression of the evidence obtained as a result of the search warrant.

### IV.    Selective and Vindictive Prosecution

Defendant moves to dismiss the Indictment against him arguing alleged selective and vindictive prosecution. He asserts three claims: (1) that he was selectively prosecuted because of his gender, (2) that the Government vindictively prosecuted him, and (3) that the Government retaliated against him for rejecting a plea deal by obtaining a Superseding Indictment.

### A.    Selective Prosecution Claim (Doc. No. 44)

Defendant argues that he has been treated differently from his unindicted co-conspirator [L.G.] based on his gender; his co-conspirator was arrested the same day as

Defendant and charged with offenses arising out of the prostitution investigation. Specifically, Defendant argues that [L.G.] was similarly situated to him but, because he was male and she was female, he was indicted by the Government.

The standard for proving a claim of selective prosecution is "a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). A selective prosecution claim requires a defendant to show that: "(1) people similarly situated to him were not prosecuted; and (2) the decision to prosecute was motivated by a discriminatory purpose." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). The "evidentiary burden is a heavy one." *United States v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011) (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)); *see also United States v. Matter*, 818 F.2d 653, 654–55 (8th Cir. 1987) ("The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require a showing of intentional and purposeful discrimination.") (quotations omitted). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *United States v. Jacobs*, 4 F.3d 603, 604 (8th Cir. 1993) (quotations omitted).

Here, Defendant argues that [L.G.] was similarly situated to him because she was arrested and charged with offenses arising out of the same investigation. "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Sumner*, No. 13-cr-71 (2) RHK, 2013 WL 5923084, at

*13 (D. Minn. Oct. 31, 2013) (citation omitted). Here, as the Government points out, there are several distinguishable legitimate prosecutorial factors that justify the Government's decision to federally prosecute Defendant and not L.G., including that, unlike the Defendant, L.G. did not recruit the victim to perform commercial sex acts, sexually assault the victim, or arrange for sexual buyers from which he took half the proceeds. These facts and more show that Defendant was not similarly situated to L.G.

However, even if Defendant could meet the first prong, he has not met the second prong. Under the second prong, Defendant must demonstrate the decision to prosecute him was motivated by a discriminatory purpose. To show a discriminatory purpose, Defendant must show "intentional and purposeful discrimination." *United States v. Kelley*, 152 F.3d 881, 886 (8th Cir. 1998) (quotations omitted). Here Defendant has offered "no credible evidence" that gender played a role in the Government's decision to charge him. *See Hirsch*, 360 F.3d at 864; *see also Peterson*, 652 F.3d at 981. He merely speculates that the "only" explanation between their disparate treatment is because L.G. is female and Defendant is male. This conjecture is not supported. Additionally, as already stated above, the Government has provided numerous reasons why it decided to federally prosecute Defendant.

Therefore, because Defendant has not met his burden with respect to either prong in the analysis, Defendant's selective prosecution claim fails and this Court recommends that his motion to dismiss based on this claim should be denied.

## B.     Vindictive Prosecution Claim (Doc. No. 44)

Defendant also argues that he was vindictively prosecuted because he violated the conditions of his release in state court. Specifically, Defendant states that he was told by a federal agent that the reason he was being prosecuted federally is because he had "cut off his ankle bracelet and ran." (Doc. No. 44 at 4.) He argues that referring his case for federal prosecution and ramping up his exposure based on the fact that he violated conditions of his release in state court amounts to vindictive prosecution. (*Id.* at 5.)

There are two ways in which a defendant may demonstrate prosecutorial vindictiveness. *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992). First, a defendant can present objective evidence that a prosecutor intended to punish him for exercising a legal right. *Id.* (citing *United States v. Goodwin*, 457 U.S. 368, 384 n. 19 (1982)). Second, "[a] defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges." *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005) (citing *United States v. Rodgers*, 18 F.3d 1425, 1429–30 (8th Cir. 1994)). A presumption of vindictiveness, however, is rarely applicable. *Campbell*, 410 F.3d at 462. Under both alternatives, "the defendant bears the burden to establish vindictiveness":

> The defendant's evidentiary burden is a heavy one, and the Court must remain mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes. Part of the defendant's burden is to show that he was prosecuted as punishment for exercising a legal right. If a prosecutor revises or adds charges merely because of new evidence or another objective reason, there is no presumption of prosecutorial vindictiveness.

*United States v. Schmitz*, No. 16-CR-280 (SRN), 2019 WL 635413, at *7 (D. Minn. Feb. 14, 2019) (citations and quotations omitted).

Here, Defendant has not presented any objective evidence that a prosecutor intended to punish him for exercising a legal right. He has not indicated which legal right he was being punished for nor has he shown evidence that might indicate the motive behind the prosecutor's decision other than something he heard from a federal agent. In addition, Defendant has not demonstrated that a reasonable likelihood of vindictiveness existed here where Defendant is being prosecuted for breaking the law and the Government, as it states, had legitimate reasons for charging the Defendant with sex trafficking of a minor. Because Defendant has not met his burden, Defendant's vindictive prosecution claim fails, and this Court recommends that Defendant's motion to dismiss related to this claim should be denied.

### C.    Vindictive Prosecution Claim (Doc. No. 65)

Defendant also argues that he was vindictively prosecuted against when the Government sought a Superseding Indictment against him after he rejected the Government's plea offer, which included as a term that Defendant waive his right to file and litigate pretrial motions in this case, or further litigate the motions he previously filed. He claims the Superseding Indictment was retaliation for rejecting the plea deal.

Again, Defendant has not presented any objective evidence that a prosecutor intended to punish him for exercising his legal right. Additionally, the circumstances surrounding the plea deal and the Superseding Indictment do not establish a reasonable

likelihood of vindictiveness. As the Government admits, it intended to supersede the Indictment based on existing evidence if Defendant refused to plead guilty to the original charge. (Doc. No. 72 at 35.) In *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978), the Supreme Court found that due process is not violated when a prosecutor carries out a threat made during plea negotiations to have the accused reindicted on more serious charges if he does not plead guilty to the offense with which he was originally charged. Similarly, in *United States v. Goodwin*, 457 U.S. 368 (1982), the United States Supreme Court found no presumption of vindictiveness where a defendant faced additional charges after he decided not to plead guilty and requested a trial by jury.

Thus, even with the Government's admission regarding its intentions during the plea deal, this is not enough to establish a reasonable likelihood of vindictiveness. Therefore, Defendant's vindictive prosecution claim based on alleged retaliation in bringing a Superseding Indictment against him fails. Accordingly, this Court recommends that Defendant's motion to dismiss be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant's "Motion to Suppress Evidence Obtained as a Result of Searches and Seizure and For a *Franks* Hearing" (Doc. No. 39) be **DENIED**; and

2.    Defendant's motions to dismiss for selective, discriminatory, and vindictive prosecution (Doc. Nos. 44, 65) be **DENIED**.

Date:  June 6, 2022

s/ Becky R. Thorson
BECKY R. THORSON
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **June 21, 2022**. A party may respond to those objections by **July 5, 2022**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.