## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Charles William Dexter, III,<br><br>                    Defendant. | Case No. 21-cr-00040 (SRN/BRT)<br><br><br>**ORDER** |

Chelsea A. Walcker & Manda M. Sertich, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Deborah K. Ellis, Ellis Law Office, 101 East Fifth Street, Suite 1500, Saint Paul, MN 55101, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Charles William Dexter, III's Objection [Doc. No. 98] to United States Magistrate Judge Becky Thorson's June 6, 2022 Report and Recommendation ("R&R") [Doc. No. 96]. In the R&R, Magistrate Judge Thorson recommends that Dexter's Motion to Dismiss for Selective, Discriminatory, Vindictive Prosecution [Doc. No. 44], Second Motion to Dismiss for Vindictive Prosecution [Doc. No. 65], and Motion to Suppress Evidence Obtained as a Result of Searches and Seizure and for a *Franks* Hearing [Doc. No. 39] be denied. For the reasons set forth below, the Court overrules Dexter's Objection, adopts the R&R in full, and **DENIES** Dexter's motions.

1

## I.       BACKGROUND

The factual background of this case is more fully set forth in the R&R, which the Court incorporates by reference. (R&R [Doc. No 96] at 2–15.) Dexter is charged with Sex Trafficking of a Minor, Sex Trafficking by Force, Fraud, and Coercion, and Use of Interstate Facility To Promote Unlawful Activity in violation of 18 U.S.C. §§ 1591, 1594(a), and 1952(a)(3). (Superseding Indictment [Doc. No. 58] at 1–4.)

Dexter moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that five search warrant affidavits for search warrants executed by the Government contained deliberate falsehoods or averments in reckless disregard for the truth. (Def.'s Mot to Suppress [Doc. No. 39] at 2–3.) Dexter further contends that evidence obtained during the execution of all five warrants should be suppressed because the affidavits supporting the warrants failed to establish probable cause. (*Id.*; Def.'s Supp. Mem. Mot. to Suppress [Doc. No 88] at 1.) Finally, Dexter moves for dismissal of his case based on selective and vindictive prosecution. (Mot. Dismiss for Selective, Discriminatory, Vindictive Prosecution [Doc. No 44] at 5; Mot. Dismiss for Vindictive Prosecution [Doc. No. 65] at 1–2.)

### A.      The Warrant for the Cadillac

On August 14, 2020, Bloomington Police Department Detective Kristin Boomer obtained a search warrant to search a 2009 Cadillac. (USA Decl. [Doc. No. 73], Ex. 2 ("Cadillac Warrant") [Doc. No 74-1].) In the warrant affidavit, Detective Boomer averred that the department received a tip from the United States Marshal Service that "an adult male who was a Registered Predatory Offender was possibly staying at a Bloomington

hotel with a juvenile female." (*Id.* at 2.) Detective Boomer summarized the department's investigative efforts to find the juvenile female, including locating two online advertisements soliciting prostitution, searching the phone number listed in one of the advertisements, and responding to that advertisement. (*Id.* at 2–3.) While responding to the advertisement, Detective Boomer averred that officers were told, via text message, to go to a specific room at a Courtyard Marriott Hotel in Bloomington, Minnesota. (*Id.*) Upon arriving at the hotel, officers found that the room was unoccupied, but officers observed condoms lying in plain view. (*Id.* at 2.) Officers then located two individuals near the hotel: a 14-year-old girl, MMV, and a 21-year-old woman, TLRB. (*Id.* at 3.)

Detective Boomer then summarizes a discussion officers had with MMV in which she explained that she was "going to have sex in exchange for money" because "Dexter wanted her to." (*Id.* at 3.) She also described her relationship with Dexter, including the fact that she "had sex with Dexter earlier in the day," that Dexter coached her on how to interact with "clients," and that he drove her to the hotel in a silver Cadillac. (*Id.*) MMV also mentioned that a woman named "Shonda" may have created the advertisement to which the officers responded. (*Id.*) The warrant affidavit indicates that MMV was then transported to the hospital to complete a sexual assault exam. (*Id.* at 4.)

The warrant affidavit also describes a conversation between officers and TLRB in which TLRB explained that she was driven to the hotel by a man matching Dexter's description, and a second woman nicknamed "Honey," for purposes of having sex for money. (*Id.* at 3–4.)

3

Detective Boomer than averred that officers located and impounded an unoccupied Cadillac registered to Dexter in the Marriott parking lot. (*Id.*) The warrant affidavit notes that officers observed two boxes of condoms in the car. (*Id.*)

After Dexter was identified, officers put a "probable cause pick up alert for [him.]" (*Id.* at 4.) Detective Boomer explained that officers used Dexter's phone and officer surveillance to locate Dexter and a woman named L.G. (*Id.*) Detective Boomer averred that Dexter then called the police department to locate the impounded Cadillac, went to retrieve the vehicle at the police department, and was arrested upon his arrival. (*Id.* at 4–5.)

### B.    The Warrant for a DNA Sample

On the same day, August 14, 2020, Detective Boomer obtained a second search warrant to obtain a DNA Sample from Dexter. (*Id.*, Ex. 1 ("DNA Warrant") [Doc. No 74] at 6–7.) In the warrant affidavit, Detective Boomer restated much of the content contained in the warrant affidavit to search the Cadillac, but included some additional observations.

Detective Boomer averred that she went to the hospital to speak with MMV, and that she spoke to a social worker who confirmed that MMV had a Sexual Assault Evidence (SAE) Kit completed during a SAE exam. (*Id.*) Detective Boomer reviewed hospital paperwork, and learned that MMV admitted to having sexual relations with Dexter. (*Id.*) The warrant affidavit then requests a DNA sample, so officers could compare it to  DNA evidence and other evidence from the SAE kit collected from MMV. (*Id.*)

### C.     Warrant for LG Smartphone

On August 15, 2020, Officer Jacob Lucas of the Bloomington Police Department obtained a third warrant to search an LG Smartphone found in Dexter's possession at the time of his arrest. (*Id.*, Ex. 3 ("Phone Warrant") [Doc. No. 74-2] at 1.) The warrant affidavit for the LG Smartphone contained many of the same facts recited in the warrant affidavit for the Cadillac.

Officer Lucas also stated that he knew from his "training and experience, [that]electronic devices such as smart phones are often used by sex traffickers and those involved in prostitution to set up 'dates' and discuss other illegal matters." He averred that the phone may contain "information about the sex trafficking and prostitution along with information about Dexter's relationship with minor victim MMV." (*Id.* at 5.)

### D.     Warrant for Dexter's Residence and Other Vehicles

On August 19, 2020, Detective Boomer obtained a fourth search warrant for Dexter's residence, and for two more vehicles. (*Id.*,  Ex. 4 ("Vehicle and Residence Warrant") [Doc. No. 74-3].) The warrant affidavit for this fourth search warrant contained many of the same facts recited in warrant affidavit for the LG Smartphone.

Detective Boomer also included details about the arrest of L.G. and Dexter, and a forensic interview with MMV in which she detailed multiple sexual assaults that occurred in various parts of Dexter's home. (*Id.* at 5–6.) Detective Boomer also described evidence indicating the presence of guns in Dexter's home, including information provided by Hennepin County Child Protection Investigator Jodie Glaspie who interviewed Dexter's child, and photos of guns recovered from Dexter's phone. (*Id.* at 6.) Additionally, the

warrant affidavit describes a phone call Dexter made from jail asking another person to go to his home and retrieve money. (*Id.* at 7.)

Detective Boomer averred that "[a]n unannounced entry [wa]s necessary []to prevent the loss, destruction or removal of the objects of the search and to protect the safety of the peace officers[]." (*Id.*) She knew from previous investigations that "individuals who are engaged in the promotion of prostitution and sexual assault crimes maintain methods to destroy evidence in a rapid and expedient manner and they will sometimes maintain weapons for their protection and the protection of the women engaged in the prostitution." (*Id.*) Further, she averred that an unannounced entry would allow officers to maintain an "element of surprise" that would "preserve officer safety but also the safety of other citizens in the neighborhood and any suspects in the residence." (*Id.*)

### E.    Warrant for Cell Phone Records

On August 24, 2020, Detective Boomer obtained a fifth search warrant for records and data connected to two T-Mobile phone numbers associated with L.G. and Defendant. (*Id.*, Ex. 5, ("T-Mobile Phones Warrant") [Doc. No. 74-4].) The warrant affidavit for this fifth warrant contained many of the same facts recited in the warrant affidavit for the Cadillac. Detective Boomer also noted that Dexter denied ever being at the Courtyard Marriott. Detective Boomer further noted that the cell phone data stored by T-Mobile would "assist in determining the location and activities of" Dexter. (*Id.* at 5.)

### F.  Indictment and Superseding Indictment

On February 18, 2021, Dexter, was indicted on one count of sex trafficking a minor. On March 20, 2022, a Superseding Indictment charged two additional counts: (1) sex trafficking by force, fraud, and coercion and (2) use of an interstate facility to promote unlawful activity. (Indictment [Doc. No. 3] at 1; Superseding Indictment at 1–4.) Dexter was offered a plea deal prior to the Government obtaining the Superseding Indictment. (*See* Gov. Mot. Frye/Lafler Hr'g [Doc. No. 51] at 2.)

### G.  Magistrate Judge Thorson's Report and Recommendation

The magistrate judge first found that a *Franks* hearing is not warranted, as Dexter failed to make "a substantial preliminary showing that the affiants made intentional or reckless false statements or that the warrant affidavit, with the at-issue statement omitted, would be insufficient to support a finding of probable cause." (R&R at 21.) Second, she found that the warrants at issue were all supported by probable cause, and that, even if not, the *Leon* good faith exception would apply. (R&R at 22–29.) Finally, she found that Dexter's allegations of selective and vindictive prosecution are not supported by the record. (*Id.* at 31–36.)

### H.  Dexter's Objection

Dexter raises specific objections to: (1) the magistrate judge's reference to TLRB as a victim; (2) her recommendation that a *Frank*s hearing be denied; and (3) her finding that the warrants for the Cadillac and his residence were supported by probable cause. (Obj. [Doc. No. 98] at 1–4.) He also raises objections to her denial of his motions to dismiss his claims for vindictive and selective prosecution. (Obj. at 4–9.)

## II.   DISCUSSION

### A.   Standard of Review

The district court reviews *de novo* those portions of the R&R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* D. Minn. L.R. 72.2(b).

### B.   Magistrate Judge's Reference to TLRB as a Victim

Dexter takes issue with the magistrate judge's reference to TLRB as a victim, arguing that the indictment does not identify her as such. (Obj. at 1.) The Government responds that victims need not be specifically identified in an indictment to be referred to as such in a court order. (Gov. Resp. to Obj. [Doc. No 100] at 2–3, n. 1.) This reference is neither inappropriate, nor does it impact the Court's analysis of the Defendant's motions.

### C.   Defendant's Motion for a *Franks* Hearing

Dexter is entitled to a *Franks* hearing only if he makes "a substantial preliminary showing that 'the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth.' " *U.S. v. El-Alamin*, 574 F.3d 915, 924–25 (8th Cir. 2009) (citing *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir.)). "This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *U.S. v. Mayweather*, 993 F.3d 1035, 1043 (8th Cir. 2021), *reh'g denied* (May 19, 2021) (citing *Snyder*, 511 F.3d at 816). Additionally,

Dexter must "show that the alleged false statement or omission was necessary to the finding of probable cause." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008).

Each of the warrant affidavits that Dexter challenges contained information about a tip officers received from the US Marshal Service "that an adult male who was a Registered Predatory Offender was possibly staying at the Bloomington hotel with a juvenile female." (*See e.g.,* USA Decl., Ex. 2 ("Cadillac Warrant") at 2.) Dexter does not suggest that the Bloomington Police Department did not receive this tip. Instead, Defendant argues that because the Bloomington Police Department had access to Dexter's criminal history and could have confirmed that he was not a predatory offender, this detail was recklessly or intentionally included in the warrant affidavit. (Obj. at 2–3.) In response, the Government argues that Dexter has failed to meet his substantial burden to warrant a *Franks* hearing. (Gov. Resp. to Obj. at 4.)

The Court agrees that Dexter has failed to make the requisite preliminary showing that the officers intentionally or recklessly included a false statement in the warrant affidavit because Dexter fails to submit any evidence that the agent acted deliberately or recklessly. *U.S. v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005) (finding no evidence officers recklessly or intentionally omitted from a warrant affidavit the fact that a state court had suppressed an earlier search, as Defendant did not demonstrate the omission was intentional as opposed to negligent). Dexter suggests Detective Boomer "had actual knowledge" that Dexter was not a registered sexual offender because she had access to his criminal record. (Def.'s Supp. Mem. Mot. to Suppress at 3.) However, he provides no evidence "to establish that [Detective Boomer] deliberately or recklessly omitted [this]

9

information in an attempt to mislead the issuing judicial officer." *Engler*, 521 F.3d at 970 (affirming denial of *Franks* hearing when defendant had no proof officers acted recklessly or intentionally in drafting affidavit). At most, the record suggests this could have been a negligent mistake, "and unintentional errors like those involved here are not the type of errors that require suppression under *Franks*." *U.S. v. Juneau*, No. 19-cr-274-WMW-KMM, 2020 WL 9170452, at *11 n. 12 (D. Minn. Dec. 21, 2020), *R&R adopted*, No. 19-cr-0274 (WMW/KMM), 2021 WL 806368 (D. Minn. Mar. 3, 2021) (finding no evidence of reckless or intentional misconduct when an officer erroneously overstated the criminal history of two individuals in a warrant affidavit).

Even if the Court were to assume that Dexter met his substantial burden of establishing that the agent intentionally or recklessly included a false statement in the warrant affidavit, his argument would still fail because the affidavits established probable cause even absent the challenged information. *Engler*, 521 F.3d at  970. The affidavits describe evidence that Dexter drove an underaged girl to a hotel, that he sexually assaulted the girl, and that he was involved in the sex trafficking of a minor. After an independent de novo review of the files, records and proceedings in the above-entitled matter, the Court finds that the affidavits at issue fully support probable cause, even without the challenged information.

In light of the above, the Court denies Defendant's motion for a *Franks* hearing.

**D.**     **Probable Cause: Four-Corner Review of the Search Warrant Affidavits**

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States. v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).

When the issuing judge relies solely upon a supporting affidavit to issue the search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). Judges issuing search warrants may "draw reasonable inferences from the totality of the circumstances" when reading a warrant application to determine whether probable cause exists. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009). Reviewing courts afford "great deference" to the issuing judge's "initial, on-the-scene determination that probable cause has been established." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010). As long as the issuing judge had a "substantial basis" for determining that the search would "uncover evidence of wrongdoing," the Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999). Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *U.S. v. Miller*, 11 F.4th 944, 953 (8th Cir.

2021), *cert. denied*, 21-7753, 2022 WL 1914258 (June 6, 2022) (citing *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007)).

### 1.    Probable Cause for Search of 2009 Cadillac

Dexter contends that there was no nexus established between the alleged crime and the Cadillac, and he argues that the magistrate judge's probable cause determination erroneously relied on the tip from the informant, and the two boxes of condoms located in plain sight in the Cadillac. (Obj. at 5.)

The Court finds that the search warrant affidavit established a sufficient nexus between the place to be searched and the evidence of a crime. The affidavit linked Dexter to suspected sex-trafficking and sexual assault through officer observations, text messages, and interviews with MMV and TLRB, (USA Decl., Ex. 2 ("Cadillac Warrant") at 3–4), and linked Dexter to the Cadillac through the same interviews, as well as through a public record search and a phone call from Dexter asking after the vehicle. (*Id.* at 3–5.) Officers were able to link the Cadillac to the alleged crimes through the interviews with MMV and TLRB, as both victims explained that they were driven to the hotel by a man matching Dexter's description, in a Cadillac matching the description of the vehicle that was subject to the warrant. (*Id.* at 3.) Further, Officers were able to see two boxes of condoms in plain sight in the vehicle. (*Id.* at 4.)

The Court notes that "[w]hether probable cause exists to issue a search warrant is a commonsense, practical question to be judged from the totality-of-the-circumstances." *Donnelly*, 475 F.3d at 954 (cleaned up) (citation omitted). When considered together, the facts set forth in the warrant affidavit demonstrate a "fair probability" that evidence of

Defendant's criminal activity would be found in the Cadillac. *Tellez*, 217 F.3d at 549. Thus, the information in the affidavit established the requisite nexus between the Cadillac and the alleged crime.

### 2.     Probable Cause Existed for Search of Dexter's Residence and Two Vehicles

Dexter contends that any link between his residence and the alleged sexual assault and sex trafficking was highly attenuated, and that the search warrant affidavit failed to state with any specificity "why any of the items sought would be in the residence at the time the warrant was sought." (Obj. at 6.)

The Court agrees with the magistrate judge that the affidavit in question contained sufficient detail to establish a nexus between Dexter's residence and the alleged crime. In the affidavit, Detective Boomer averred that MMV described multiple sexual assaults in the residence, and the use of multiple cars to drive her to meet clients. (USA Decl., Ex. 4 ("Vehicle and Residence Warrant") at 6.) These facts indicate a "fair probability" that evidence of Defendant's alleged criminal activity would be found in his home and other vehicles. *Tellez*, 217 F.3d at 549.

Additionally, the officer explained that guns are frequently kept by individuals involved in sex trafficking as a form of protection for themselves and the women they are trafficking. (*Id.* at 7.) The affidavit described pictures of guns found on Dexter's phone, and an interview with his daughter in which she described finding a gun in a pillowcase. (*Id.* at 6–7.) Because the warrant established probable cause that Nelson unlawfully possessed firearms, probable cause existed to search his residence for firearms, as people

"generally keep [firearms] at home or on their persons." *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011).

### 3. Probable Cause for Warrants for DNA, Cell Phones, and Cell Phone Data

Dexter does not assert any specific objection to the magistrate judge's analysis of probable cause for the warrant affidavit for Dexter's DNA. After an independent *de novo* review of the files, records and proceedings in the above-entitled matter, the Court finds that the search warrant for Dexter's DNA was supported by probable cause.

Dexter also did not assert any specific objections to the magistrate judge's analysis of  probable cause for the warrant affidavits for the searches of Dexter's cell phone and for the cell data stored by T-Mobile. After an independent *de novo* review of the files, records and proceedings in the above-entitled matter, the Court finds that there was probable cause for those searches.

### E. Good-Faith Exception

Moreover, even if probable cause did not exist, the good-faith exception to the exclusionary rule would apply here. Although evidence obtained in violation of the Fourth Amendment must generally be excluded, if officers obtained the evidence pursuant to a warrant and reasonably relied on the issuing judge's probable cause determination, the disputed evidence will be admitted. *United States v. Leon*, 468 U.S. 897, 906 (1984); *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008).

"[T]he fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith."

*Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation omitted). There is no evidence here to suggest that the officers' reliance on the warrants was unreasonable or not in good faith. Accordingly, even if probable cause was lacking with respect to the search warrant affidavits, the evidence is admissible under the good-faith exception to the exclusionary rule.

### F.    No-Knock Warrant

Dexter maintains that the no-knock warrant executed at his residence violated his Fourth Amendment rights. (Obj. at 6.) The Eighth Circuit has held that the requirements for a valid search warrant under the Fourth Amendment incorporate the common-law requirement that police officers entering a dwelling must "knock and announce" their presence and purpose before attempting forcible entry. *Doran v. Eckold*, 409 F.3d 958, 962–63 (8th Cir. 2005) (citing *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)); *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). However, the Fourth Amendment does not forbid all no-knock searches, "[r]ather, it requires that searching officers justify dispensing with the knock-and-announce requirement." *U.S. v. Scroggins*, 361 F.3d 1075, 1081 (8th Cir. 2004) (analyzing whether a no-knock warrant was properly issued and executed).

The showing that officers must make to obtain a no-knock warrant "is the same showing they must make to justify their own decision to dispense with the knock-and-announce requirement. Only the timing differs." *Id.* at 1082. A no-knock entry is justified if officers "show they had a reasonable suspicion that knocking and announcing their presence under the particular circumstances would threaten officer safety, be futile, or

inhibit the investigation of the crime." *Id.* Thus, when "a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a 'no-knock' entry." *U.S. v. Banks*, 540 U.S. 31, 36 (2003).

First, to the extent that Dexter asks the Court to find that the magistrate judge misapplied *Hudson v. Michigan*, 547 U.S. 586 (2006), his objection is overruled. As the magistrate judge explained, the proper remedy for an improper no-knock warrant is not to exclude evidence retrieved during the search. (R&R at 30–31.) Thus, this Court will not suppress evidence retrieved during the execution of the no-knock warrant. *See also United States v. Gaver*, 452 F.3d 1007, 1008 (8th Cir. 2006) (citing *Hudson*, 547 U.S. at 589–90) ("The exclusionary rule does not apply to violations of the knock-and-announce requirement of the Fourth Amendment.").

The Court also notes that the unannounced entry authorized by the search warrant was appropriate given information in the affidavit suggesting that there were likely firearms in Dexter's residence and that others had access to his residence, and thus those firearms. *See United States v. Stevens*, 439 F.3d 983, 988–989 (8th Cir. 2006) (finding that a no-knock search warrant was justified based on the presence of a firearm in a common area of the house as reported by a confidential informant). Additionally, the affidavit contained sufficient averments that officers were concerned that evidence would be destroyed during the execution of the warrant. (USA Decl., Ex. 4 ("Vehicle and Residence Warrant") at 9 ("Your affiant knows from previous investigations that individuals who are engaged in the promotion of prostitution and sexual assault crimes

maintain methods to destroy evidence in a rapid and expedient manner. . . . An unannounced entry presents a higher likelihood to allow police to gain entry and control any suspects prior to them having the opportunity to arm themselves or destroy evidence.").) *See U.S. v. Tyler*, 238 F.3d 1036, 1040 (8th Cir. 2001) (holding a no-knock warrant was appropriate when officers attested that a defendant was likely to destroy evidence of his drug crimes). Accordingly, the no-knock warrant did not violate Dexter's Fourth Amendment rights.

### G.    There is No Evidence of Vindictive or Selective Prosecution

Dexter objects to the magistrate judge's finding that there is no evidence of selective or vindictive prosecution. He alleges that he has established he is the victim of selective prosecution based on the disparate treatment of his co-conspirator, L.G. (Obj. at 8–9.) He further contends that the Government sought a superseding indictment because he refused to sign a plea agreement, which he argues establishes a presumption of vindictive prosecution. (*Id.* at 9.)

### 1.    There is No Evidence to Support a Claim Of Selective Prosecution

A defendant asserting a claim of selective prosecution must demonstrate: "[(1)] that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and [(2)] that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." *United States v. Leathers*, 354 F.3d 955, 963 (8th Cir. 2004) (citation omitted). A defendant bears the burden of proving that the government engaged

in selective prosecution. *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). This "evidentiary burden is a heavy one." *U.S. v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011) (citing *Leathers*, 354 F.3d at 961).

Dexter has failed to show that persons similarly situated to him were not prosecuted for similar conduct. "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Heying*, No. 14-cr-30 (JRT/SER), 2014 WL 5286153, at *12 (D. Minn. Aug. 15, 2014), *report and recommendation adopted*, 2014 WL 5286155, at *1, 7 (D. Minn. Oct. 15, 2014); *see also United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (holding that individuals are similarly situated for purposes of a selective prosecution claim when, among other requirements, they "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan"). Moreover, the evidence against the unprosecuted person must be "as strong, or stronger, than that against the defendant." *Smith*, 231 F.3d at 810.

As the magistrate judge discussed, there are marked differences between Dexter's conduct here and L.G.'s involvement. (R&R at 33 ("[T]here are several distinguishable legitimate prosecutorial factors that justify the Government's decision to federally prosecute Defendant and not L.G., including that, unlike the Defendant, L.G. did not recruit the victim to perform commercial sex acts, sexually assault the victim, or arrange

for sexual buyers from which he took half the proceeds.").) The Court concludes that these issues are clearly "distinguishable legitimate prosecutorial factors" that preclude a finding that L.G. was similarly situated to Dexter. *Heying*, 2014 WL 5286153, at *12.

Nor has Dexter demonstrated that prosecutors acted with discriminatory purpose. A defendant may not simply assert that gender was a factor in a prosecutor's decision, instead he must offer "credible evidence" of impermissible motive. *See Hirsch*, 360 F.3d at 864. Here, Dexter offers "no credible evidence" that gender played a role in the Government's charging decisions, *Peterson*, 652 F.3d at 981, and instead he offers unsupported speculation and conjecture. Thus, Dexter has failed to meet the second prong. Because Defendant has not met his burden with respect to either element of his selective prosecution claim, his claim fails, and his motion to dismiss based on selective prosecution is denied.

### 2.   There is No Evidence to Support a Claim Of Vindictive Prosecution

After offering Dexter a plea deal, which he refused, the government sought a Superseding Indictment, charging Dexter with two additional Counts: (1) sex trafficking by force, fraud, and coercion and (2) use of an interstate facility to promote unlawful activity. (Superseding Indictment at 1–4.) Dexter contends that the decision to seek a superseding indictment from the grand jury was intended to punish him for refusing the plea deal. (Obj. at 9.)

"Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *United States v. Williams*, 793 F.3d 957, 963

(8th Cir. 2015) (citing *Leathers*, 354 F.3d at 961). As the Magistrate Judge noted, the Supreme Court has found that due process is not violated when a prosecutor carries out a threat made during plea negotiations to have the accused reindicted on more serious charges if he does not plead guilty. *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *see also United States v. Goodwin*, 457 U.S. 368 (1982) (finding no  presumption of vindictiveness where a defendant faced additional charges after he decided not to plead guilty).

A defendant bears a heavy burden "to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties." *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016). The Court must remain "mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *Leathers*, 354 F.3d at 961 (citing *United States v. Kelley*, 152 F.3d 881, 885–86 (8th Cir. 1998)).

In the R&R, the magistrate judge properly observed that charging a defendant with a more serious charge after he declines to plead guilty to a lesser charge, without more, does not violate due process. *Bordenkircher*, 434 U.S. at 363 ("[I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."); *Goodwin*, 457 U.S. at 380 ("[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.")). Thus, Dexter's claim for vindictive prosecution fails.

In sum, the Court fully agrees with the magistrate judge that there is no basis to dismiss the Superseding Indictment on grounds of vindictive prosecution. Dexter's motion to dismiss on this basis is therefore denied.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Objection to the Report and Recommendation [Doc. No. 98] is **OVERRULED**;

2. The Report and Recommendation [Doc. No. 96] is **ADOPTED** in full;

3. Defendant's Motion to Suppress Evidence Obtained as a Result of Searches and Seizure and For a *Franks* Hearing [Doc. No. 39] is **DENIED**; and

4. Defendant's motions to dismiss for selective and vindictive prosecution [Doc. Nos. 44, 65] are **DENIED**.


Dated: July 27, 2022                                  s/Susan Richard Nelson
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge